## Life & Casualty Insurance Company of Tennessee v. Coleman, State Auditor.

(Decided March 7, 1930.)

WM. MARSHALL BULLITT and JOHN E. TARRANT for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

L. D. SMITH, Attorney General of Tennessee, amicus curiæ.

JULIEN ERWIN, amicus curiæ, for Intersouthern Life Insurance Company.

EDW. G. KLEMM, amicus curiæ, for American Life & Accident Insurance Company.

W. W. THUM, amicus curiæ, special counsel, for Kentucky State Life Insurance Company.

CLARIS ADAMS, amicus curiæ, general counsel, for American Life Convention.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This appeal involves the construction of section 637, Kentucky Statutes, commonly known as the Kentucky Retaliatory Insurance Act, which reads:

"When by the laws of any other state any taxes, fines, penalties, deposits of money, or of securities or other obligations, prohibitions or requirements, are imposed upon insurance companies organized or incorporated under any general or special law of this state, and transacting business in such other state, or upon the agents of such insurance company, greater than those imposed upon similar companies by the laws of this state, or when such laws of other states shall require insurance companies of this commonwealth to deposit money or security for the benefit or protection of citizens of such other states, or when the laws of any other state, or the officers thereof, shall prohibit companies of this commonwealth from transacting business in said state, without a special examination of said companies, or a computation of their liabilities by the officers of said state, the same taxes, fines, penalties, deposits, examinations, obligations and requirements shall be imposed upon all insurance companies doing business in this state, which are incorporated or organized under the laws of such state, and upon their agents."

This act is not brought into operation unless and until a foreign insurance company seeks to do business in this state which is incorporated under the laws of a state that places burdens upon foreign companies greater than the burdens placed upon foreign companies by Kentucky.

The appellant, Life & Casualty Insurance Company of Tennessee, qualified to do business in Kentucky and collected $215,256.27 in 1926 and $225,764.57 in 1927, as premiums on business done in Kentucky. Section 4226, Kentucky Statutes, provides:

"Every life insurance company, other than fraternal assessment life insurance companies, not organized under the laws of this state, but doing business therein, shall, . . . return to the auditor of public accounts for deposit in the insurance department a statement under oath of all premiums

. . . received . . . on business done in this state
. . . and shall at the same time pay into the state
treasury a tax of two dollars ($2.00) upon each one
hundred dollars ($100.00) of said premiums. . . ."

The Tennessee Revenue Act (Shannon's Annotated'
Code, sec. 3302) provides:

"Each and every foreign insurance company
doing business under the provisions of this article,
shall, . . . pay into the treasury of the state the
sum of two dollars and fifty cents upon each one hun-
dollars of said gross premiums so ascertained, which
shall be in lieu of all other taxes."

The Supreme Court of Tennessee has held that the
phrase, "in lieu of all other taxes," precludes municipal-
ities from imposing any taxes upon foreign insurance
companies, and the only tax imposed on such companies
in Tennessee is 2½ per cent. of the premiums collected
in that state. Hunter v. Memphis, 93 Tenn. 571, 26 S.
W. 828; City of Memphis v. Hernando Insurance Com-
pany, 6 Baxt. (Tenn.) 527; Memphis v. American
Express Company, 18 Pickle (102 Tenn.) 336, 52 S. W.
172.

In addition to the 2 per cent. state tax provided for
by section 4226 of the Kentucky Statutes, the Legislature
has conferred upon cities of the various classes the
power to impose taxes upon foreign insurance compan-
ies transacting business within their municipal limits.
Kentucky Statutes, secs. 2980, 3058-2, 3290-1, 3490-1,
3637-4 and 3673. The appellant reported to the auditor,
as required by law, the amount of premiums collected by
it in Kentucky in 1926 and 1927, and, recognizing that,
under the Kentucky Retaliatory Law, it should pay in
taxes an amount equal to 2½ per cent. of the premiums
collected by it, it tendered that amount for each year, less
the amount of municipal taxes paid by it, which were
$957.66 in 1926 and $940.74 in 1927. The amount ten-
dered was in excess of 2 per cent. of the premiums col-
lected by the company. The Kentucky authorities to
whom the tax was tendered refused to treat the munici-
pal taxes as deductible and insisted that appellant should
pay 2½ per cent. on the amount of premiums collected
in this state, which was the amount of the Tennessee
premium tax. The Tennessee company paid the addi-
tional sums under protest and brought this suit to

recover them. The lower court denied a recovery, and it has appealed.

The sole question to be determined on this appeal is whether or not the municipal taxes paid by the Tennessee company should be considered as a part of the aggregate taxes paid in Kentucky in construing our Retaliatory Tax Act.

The primary purpose of this act is not to raise revenue but to secure for the insurance companies of Kentucky evenhanded treatment by the Legislatures of other states. All courts hold that retaliatory tax laws are penal in nature and should be strictly construed. Such laws have been adopted in most of the states of the union and are very similar in character. By these laws one state imposes the same or like restrictions and conditions upon insurance corporations of other states doing business within its territory as such other states impose upon foreign insurance corporations doing business therein. The purpose of such acts is to protect domestic companies from unreasonable taxation by other states and are only brought into operation when another state taxes foreign insurance companies at a rate higher than the retaliating state taxes companies of other states. In 12 R. C. L. p. 67, sec. 46, the author says:

"Retaliatory statutes will not be enforced against a foreign corporation on the ground of alleged restrictions in the statutes of the state which created it, unless it is clearly proven that those statutes would have the restrictive effect which is claimed. Moreover, while it is doubtless true that the ultimate object of such statutes is to secure reciprocity, their immediate object is to retaliate on the companies of a given state disfavors shown to domestic companies in such state; consequently they are penal in character and must, unlike reciprocal statutes, be strictly construed."

The distinction between retaliatory and reciprocal statutes is thus stated in State v. Fidelity & Casualty Insurance Company, 49 Ohio St. 440, 31 N. E. 658, 659, 16 L. R. A. 611, 34 Am. St. Rep. 573:

"The character of this section is relative to its construction. It is claimed to be reciprocal in character, and should therefore be liberally construed. A little reflection will, we think, show that it is not

of this nature, but, upon the other hand, retaliatory, and should therefore be strictly construed; or, in other words, not applied to a case that does not fairly fall within its letter. Reciprocity expresses the act of an interchange of favors between persons or nations; retaliation, that of returning evil for evil, or disfavors for disfavors. Accurately speaking, we reciprocate favors and retaliate disfavors. This, then, is a retaliatory statute. It treats the companies of other states as Ohio companies are treated in them; but the moment it is made to appear that Ohio companies are not treated with the same favor in another state that companies of that state are treated in Ohio, a case is made for the application of its provisions, and retaliation follows as a result. It is true that the ultimate object of the statute is to secure reciprocity; but what we have now to do with is not its ultimate, but its immediate, object, and that is to retaliate on the companies of a given state disfavors shown to Ohio companies in the same state.''

In the instant case the Tennessee Revenue Act provides for a 2½ per cent. tax upon the gross premiums collected in the state which shall be in lieu of all other taxes. The Kentucky Revenue Act provides for a 2 per cent. tax upon gross premiums collected in the state, and in addition municipalities are permitted to impose taxes upon insurance companies for the privilege of doing business within their corporate limits. The municipalities are agencies of the state government and can levy and collect taxes only in the manner and amount authorized by the state. In enacting the retaliatory insurance statute, it was the purpose of the Legislature to equalize the burdens imposed upon foreign and domestic companies. There can be no equalization of the burden unless the taxes levied or the obligations imposed are the same in the aggregate. In order to provide equality, which is the manifest object of the statute, it is not necessary to levy a specific tax to meet a similar tax levied by another state, but, if the aggregate of the taxes collected from a foreign insurance company in the retaliating state equals the tax imposed on foreign insurance companies by the state in which the taxed company is incorporated, the object of the law has been attained. Equality is the result aimed at and is achieved when the ultimate taxes levied are equal, even though they are

imposed by different arms of the respective state governments and are applied to different purposes.

In construing the Ohio retaliatory tax statute, which is substantially the same as our statute, the Supreme Court of Ohio said in State v. Reinmund, 45 Ohio St. 214, 13 N. E. 30, 32, a case very similar to the one now before us:

"In other words, our law is protective in its character; its purpose being to protect Ohio insurance companies from imposition which might be put upon them by other states, and not retaliatory in the sense of first imposing upon foreign companies such taxes as are imposed upon other foreign corporations under like circumstances, and then, in addition, a sum equal to what other states may impose upon our companies doing business there. And the superintendent of insurance performs his whole duty in the matter when he requires companies organized out of this state to pay, in addition to the amount paid as taxes in the several counties, a sum sufficient to make the total equal to the amount that would be realized were the rule of taxation of the state, under whose laws the foreign company is organized, applied to such company's business transacted in this state.

"This view is in consonance with a recognized policy of this state of long standing, which is to invite, rather than dispel, the investment and use here of foreign capital. In this spirit, the obvious interest of the state is to encourage the location here of agencies of companies organized in other states, having large experience and abundant capital, in order to afford our people the manifold benefits of the security given by their contracts; and any unnecessary discrimination against those companies would be inconsistent with this enlightened policy, and would tend to injuriously affect our people. The language employed in the sections quoted fails to show any purpose on the part of the legislature to depart from this well-settled policy."

In Cochrane v. Bankers' Life Company (C. C. A.) 30 F. (2d) 918, 922, it is said: "Retaliatory statutes, it has been held with conclusive reasonings, are intended to level the amount of taxes, and not, as a penal statute, to require the payment of an equal rate of taxation as a

penalty.'' Also see Metropolitan Life Insurance Company v. Commonwealth, 198 Mass. 466, 84 N. E. 863; Bankers' Life Company v. Richardson, 192 Cal. 113; 218 P. 586.

Our conclusion is that the provisions of the retaliatory tax statute were complied with when the Tennessee company paid an amount equal to the total tax payable by foreign companies on the same volume of business in Tennessee, and, in determining the amount to be paid, the Tennessee company must be given credit for municipal taxes paid in Kentucky. Of course, in no event shall the amount payable to the state by foreign insurance companies be less than 2 per cent. of the amount of premiums collected; that being the primary rate fixed by the revenue statute.

It is suggested by the Attorney General that this construction of section 637 will render the law difficult to administer and will entail endless computation and investigation by the insurance department to determine which, out of all the cities in Kentucky, each Tennessee insurance company chooses to do business in, and the amount of tax paid to each city. A sufficient answer to this contention is that the present state tax of 2 per cent. is imposed on foreign insurance companies on the basis of statements furnished by such companies of business done by them in Kentucky. In order to secure credit for municipal taxes paid by them, they must necessarily report such payments, the correctness of which can be quickly and easily verified. It follows that the lower court erred in adjudging that a credit should not be allowed for the municipal taxes paid by appellant.

Wherefore the judgment is reversed, with directions to enter a judgment in conformity herewith.